UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| GREGORY D. SPENCER,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Respondent. | CV 08-168-S-REB<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Currently pending before the Court is Gregory D. Spencer's Petition for Review (Docket No. 1) seeking review of the final decision of Respondent denying his claim for Title II Social Security disability benefits and Title XVI Supplemental Security Income benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

　　　　Gregory D. Spencer ("Petitioner" or "Claimant") applied for Social Security Disability and Social Security Income benefits on December 27, 2001. (AR 61, 425). Petitioner's applications were denied initially (AR 46) and again after reconsideration (AR 37). Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on August 14, 2003 in Boise, Idaho. (AR 25, 436).

**MEMORANDUM DECISION AND ORDER- p. 1**

At the hearing, the Petitioner testified regarding pain and associated limitations in his back; his right hand, elbow, and shoulder; and depression. (AR 439). Petitioner also claimed an on-set date of June 25, 2001. (AR 440).

On January 28, 2004, the ALJ denied Petitioner's claim. (AR 14-24). Petitioner appealed the ALJ's decision to the Appeals Council (AR 10) and, when the appeal was denied (AR 6), filed a timely Petition for Review in the United States District Court for the District of Idaho. (AR 531). On August 12, 2005, upon stipulation of the parties, the district court remanded the case back to the ALJ for further review. (AR 537-38).

Upon remand, a second hearing was held on in Boise, Idaho on March 7, 2007. (AR 516, 760). Petitioner, who was represented by counsel, submitted additional medical records into the administrative record and testified at the hearing concerning his alleged impairments. (AR 767). (AR 761-62). Also testifying at the hearing were medical expert Dr. J. Michael Dennis and vocational expert Dr. Polly A. Peterson. (AR 762).

At the time of the second hearing, Petitioner was 46 years old, had attended school through the tenth grade, and had previous work experience tying rebar, as a rebar detailer, and as a supervisor of rebar installation. (AR 769-75). Petitioner testified that he primarily suffers from depression, a chronic pain disorder, and physical impairments related to his back; right hand, elbow, and shoulder; and has had a right carpal tunnel release. (AR 766). Petitioner argued that he does not have the residual functional capacity to sustain work due to the combination of these impairments. *Id.*

Also at the hearing, Petitioner's counsel conceded that there was evidence in the record indicating that Petitioner had been working in a substantial gainful capacity as a supervisor from

**MEMORANDUM DECISION AND ORDER- p. 2**

January 2005 to the date of the hearing. (AR 765). For this reason, Petitioner's counsel indicated that Petitioner might pursue a closed period of disability. *Id*. In addition, Petitioner testified that his condition had improved. (AR 783). For example, Petitioner stated, "I finally figured out how to manage this pain with the pain medication, without having to take so much, and I - - the physical therapy finally paid off. My muscles in my back got a little stronger, and that started compensating for the disc problems." (AR 784).

At the time of the first ALJ decision, Petitioner was last insured for Title II disability benefits through December 31, 2005. (AR 12-24). At the time of the second ALJ decision, Petitioner had acquired sufficient quarters of coverage to remain insured through December 31, 2010. (AR 489-513).

Ultimately, the ALJ denied Petitioner's claim on January 10, 2008. (AR 492-513). The ALJ found that Petitioner engaged in substantial gainful activity after December 2004 (AR 494) and suffered from a severe combination of impairments (AR 501). Despite these impairments, the ALJ found that Petitioner had the residual functional capacity to perform a limited range of light work, including past relevant work as a supervisor of rebar installation, as Petitioner described it, and, alternatively, was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (AR 501-12). Accordingly, the ALJ found that Petitioner has not been under a disability, as defined in the Social Security Act from June 25, 2001 through the date of the decision. (AR 513).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v.*

**MEMORANDUM DECISION AND ORDER- p. 3**

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

With respect to questions of fact, this Court's task is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457.

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

**MEMORANDUM DECISION AND ORDER- p. 4**

*See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

### III.  DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b).

In the instant action, the ALJ concluded that Petitioner has engaged in substantial gainful activity since his alleged onset date. (AR 494). The ALJ noted that the evidence in the record was inconclusive for the period prior to December 2004 when Petitioner was self-employed as a drafter/ rebar detailer. (AR 495). However, after December 2004, Petitioner's earnings record reflects work at substantially gainful levels. (AR 496). According to the earnings record, Petitioner earned $1,240 in December 2004; $36,838.95 in 2005; $35,372.33 in 2006 and approximately $23, 283.00 through the third quarter of 2007. *Id*. The ALJ determined that these wages are "clearly above and beyond substantial gainful activity levels even giving consideration to the [employer's] accommodations." (AR 508).

**MEMORANDUM DECISION AND ORDER- p. 5**

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found that Petitioner has the following severe combination of impairments: degenerative joint disease of the right shoulder; degenerative disc disease; a depressive disorder, recurrent; a history of multiple trauma to the right elbow and wrist; and a history of opiate dependence. (AR 496).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In this respect, the ALJ concluded that Petitioner does not have an impairment, singly or in combination, that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (AR 496).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ concluded that Petitioner retains the residual functional capacity to perform a limited range of light work, including past relevant work as a supervisor of rebar installation, as he described it. (AR 500, 512).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In the instant case, the ALJ

**MEMORANDUM DECISION AND ORDER- p. 6**

found that, even if Petitioner did not have the residual functional capacity to perform past relevant work and was limited to unskilled work, Petitioner retained the residual functional capacity to perform the requirements of a representative occupation, surveillance system monitor, and that such work that exists in significant numbers in the national economy.  (AR 512).

**B.**     **Petitioner's Issues with the ALJ's Decision**

Petitioner raises five issues with regard to the ALJ's decision.  As explained more fully below, the Court ultimately finds Petitioner's arguments unpersuasive.  Fundamentally, the ALJ's 22-page decision reflects that the ALJ applied the proper legal standards and thoroughly considered the evidence.  Because the decision is well-reasoned and supported by substantial evidence in the record, it will not be disturbed on appeal here.

**1.**     **Closed Period of Benefits**

Petitioner argues that the "ALJ erred in not at least considering that the petitioner was entitled to a closed period of benefits for the period 6/25/01 through December 2004." *Petitioner's Brief*, p. 6 (Docket No. 23).  This argument fails, because it appears that the ALJ, in fact, considered a closed period of benefits.  For example, the ALJ found, "since December 2004, the claimant has engaged in substantial gainful activity ['SGA']."  (AR 496).  The ALJ also noted that "[i]f an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience."  (AR 493).

Moreover, even if the ALJ did not apply a closed period of disability, the decision is not in error.  In order to demonstrate that he is eligible to receive Social Security disability benefits,

**MEMORANDUM DECISION AND ORDER- p. 7**

Petitioner must demonstrate that he was disabled for a period of at least 12 months between the time period of June 25, 2001 through December 2004.  *See* 42 U.S.C. § 423.  Here, the ALJ determined that Petitioner was not disabled for any period of time between June 25, 2001, the alleged onset date, through the date of his decision, January 10, 2008.  (AR 513).  This necessarily includes the closed period of benefits alleged by Petitioner.  Accordingly, the decision will not be reversed on the basis that the ALJ failed to consider a closed period of disability.

### 2. Petitioner's Credibility

Petitioner argues that the ALJ did not properly support his finding that Petitioner's testimony and allegations of pain and depression were not credible.  *Petitioner's Brief*, p. 6 (Docket No. 23).

Where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on " 'clear and convincing reasons.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996)). The only time this standard does not apply is when there is affirmative evidence that the claimant is malingering. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999).

Here, there is no finding regarding malingering.  Instead, the ALJ found that Petitioner's medically determinable impairments could reasonably be expected to produce the symptoms Petitioner has alleged.  However, the ALJ also concluded that Petitioner's statements regarding "the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (AR

503). In support of this finding, the ALJ noted: (1) Petitioner's "complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone;" (2) the medical records indicate "little treatment for his condition(s) other than requests for pain medication;" and (3) Petitioner's "level of activity was inconsistent with his allegations of total disability." (AR 503-05).

In addition, the ALJ noted that there is no evidence in the record indicating that Petitioner's condition was any worse during the closed period of disability alleged. "[T]he claimant has not submitted any evidence that would suggest that his condition was any worse than when he was working prior to the alleged onset date, or prior to his return to substantial gainful activity in December 2004." (AR 508). Accordingly, the ALJ concluded that Petitioner "could have been working at a level consistent with substantial gainful activity, at all times relevant, had he chose [to]." *Id.*

The record supports the ALJ's justification for his ruling, even upon a clear and convincing standard. *See Edlund c. Massaneri*, 252 F.3d 1152, 1157 (9th Cir. 2001) (holding exaggerated complaints of pain in order to receive prescription pain medication is sufficient reason to conclude claimant not credible). The medical records overwhelmingly reflect that between April 2000 and December 2004, Petitioner repeatedly sought medical attention for his back and elbow pain and the doctors consistently noted drug-seeking behaviors and a described level of pain that could not be explained by the objective medical evidence.

For example, Petitioner saw Dr. James Weiss of Primary Health between April 2000 and October 30, 2001. (AR 96-119). Dr. Weiss noted that Petitioner had a muscular low back strain caused by injury on April 26, 2000 with lack of expected progress at four months (AR 112) and

**MEMORANDUM DECISION AND ORDER- p. 9**

six months (AR 109). After reviewing an MRI of Petitioner's back, Dr. Weiss described "pain not equivalent to bodily harm." (AR 115). Dr. Weiss also noted that Petitioner needed physical therapy but refused such treatment saying it was too expensive, and he was "better on meds." (AR 117). Dr. Weiss counseled Petitioner of the "need to avoid narcotic dependence." *Id.*

On October 30, 2001, Dr. Weiss refused to refill Petitioner's Oxycontin prescription noting that, in the past, Petitioner had refilled a prescription eight days early and also reported that he had lost a prescription bottle though he did not file a police report. (AR 96). Dr. Weiss also advised Petitioner to call before changing his medical dosing. (AR 98).

Between October 19, 2000 and February 14, 2002, Petitioner also sought treatment from Dr. Crump of St. Luke's Family Health. (AR 139-159). Between October 2000 and June 2001, Petitioner sought treatment from Dr. Crump for right elbow pain and was given prescriptions for Norco and Vioxx. (AR 157-158). Dr. Crump referred Petitioner to a specialist who indicated that "his degree of pain is unexplained by the current exam." (AR 155). Dr. Crump also advised Petitioner of "the possibility of tolerance and dependence with subsequent withdrawal if he is on narcotics for the next month." *Id.*

In April 30, 2001, Dr. Crump noted "the patient is aware that I will not prescribe any additional narcotics for him." (AR 151). Nevertheless, on June 25, 2001, after noting that neither he nor two other referred physicians could help treat Petitioner, Dr. Crump again noted "the time that I am willing to provide narcotics for him is drawing to an end." (AR 149).

On February 6, 2002, Petitioner returned to Dr. Crump, this time seeking help for back pain. (AR 148). Dr. Crump's notes Petitioner was taking hydrocodone and prescribed more Norco along with prednisone and Flexeril (AR 148). Petitioner returned to Dr. Crump on

February 14, 2002, and Dr. Crump noted, "[t]here is some confusion about his pain pills. He states that he was only given 30 Norco at our last visit and I stated that I had given him 60 on the 6th and then on the 11th another 30. He states that the pharmacy would never fill the prescription on the 6th." (AR 147). In addition, on February 20, 2002 and again on February 22, 2002, Petitioner contacted Dr. Crump's office for different pain medication, because the Norco was not working. (AR 146-48). The notes indicate that when Petitioner was informed that he needed to continue with his current medications, "much resistance [was] given." *Id.*

In addition, it does not appear from the record that either Dr. Weiss or Dr. Crump was aware that Petitioner was seeking treatment for pain from both of them in the same basic time period. For example, in October 2000, Petitioner saw Dr. Weiss for his back pain and Dr. Crump for his elbow pain. (AR 107-111, 157-58). Both doctors prescribed pain medication, yet there is no indication from the record that Petitioner informed either doctor of the other. While the treatment for back pain was in early October and the treatment for elbow pain did not begin until October 19, it appears that Petitioner was prescribed pain medication by both doctors to cover the same basic time period.

Similarly, between March and May 2001, Petitioner saw both Dr. Weiss for his back pain and Dr. Crump for his elbow pain. (AR 101-02, 151). Again, both doctors prescribed pain medication, and there is no indication that either doctor knew about the other, even though both doctors referred to the dangers of over-prescribing pain medication. For example, on April 30, 2001, Dr. Crump noted that he informed Petitioner "that I will be the only one that prescribes narcotics for him and I have informed him that I am able to check on who is giving him

**MEMORANDUM DECISION AND ORDER- p. 11**

narcotics." (AR 151). Nonetheless, approximately one week later, on May 7, 2001, Dr. Weiss increased Petitioner's OxyContin prescription. (AR 101).

Petitioner also sought help for his pain from the emergency rooms of several area hospitals. Again, these physicians examined Petitioner, found little objective evidence to support the level of pain described, and noted Petitioner's drug-seeking behavior. For example, on March 25, 2002 and again on April 1, 2002, Petitioner went to the Saint Alphonsus Regional Medical Center emergency room for back pain. (AR 122, 129). On both occasions, Dr. Mark A. Henzler treated Petitioner. *Id.* On March 25, 2002, Dr. Henzler ordered an MRI that revealed some disk disease and mild annular bulging, but no impingement on the nerves or obvious S1 or S2 abnormalities. (AR 123,131 ). Dr. Henzler noted that Petitioner had been using Duragesic patches and "up to six to eight Norco a day for the last two weeks." (AR 130). Dr. Henzler described this as a significant amount of Norco (AR 23). Dr. Henzler counseled Petitioner regarding the "problems of dealing with large usage of chronic narcotics." (AR 131).

On June 14, 2003, Petitioner went to the Mercy Medical Center emergency room for back pain and was then transferred to the West Valley Medical Center in Caldwell, Idaho for mental health treatment. (AR 231-290). At the West Valley Medical Center, Dr. George A. Nicola examined him and found the physical exam "very inconsistent." (AR 231). In addition, a psychiatrist, Dr. Larry Mark Kimsey, noted that Petitioner had reported "suicidal levels of pain" but later explained that he was not actually intending to kill himself but was in a great deal of pain and becoming overwhelmed by it. (AR 236). Dr. Kimsey also noted that Petitioner complained a great deal about pain "and was extremely medication seeking throughout his time here." *Id*. Dr. Kimsey reported that another physician from Mercy Medical Center, opined that

**MEMORANDUM DECISION AND ORDER- p. 12**

Petitioner's "response to the medications given in the emergency room would indicate that he is taking extremely high doses of opiate pain medications." *Id.*

In sum, as the above examples demonstrate, Petitioner's medical records provide ample support for the ALJ's findings that Petitioner's complaints suggest a greater severity of impairment than can be shown by the objective medical evidence and little treatment for his conditions beyond the repeated requests for pain medication. The records further indicate that Petitioner was seeing multiple doctors for pain medication in the same basic timeframe without any indication that the doctors knew about each other and despite the doctors expressed concern regarding Petitioner's use of narcotics. This evidence seriously undermines Petitioner's credibility and provides substantial support for the ALJ's decision to find not entirely credible Petitioner's statements concerning the intensity, persistence, and limiting effects of his pain.

### 3. The ALJ's Rejection of Dr. Silsby's Opinion

Dr. Harry Silsby, M.D., is a psychiatrist who evaluated Petitioner on September 12, 2003. (AR 376-78). In order to reject the uncontradicted opinion of an examining physician, the Commissioner must provide "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, if the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

Dr. Silsby opined that Petitioner had recurrent major depression that was inadequately treated and recommended that Petitioner seek treatment and be placed on appropriate medication. (AR 510). Dr. Silsby assessed Petitioner with a Global Assessment of Functioning ("GAF") score of 40. The ALJ rejected the GAF score of 40.

**MEMORANDUM DECISION AND ORDER- p. 13**

Petitioner argues that the ALJ erred in rejecting Dr. Silsby opinion, because "[t]he ALJ's only reason for rejecting Dr. Silsby's opinion is that, in the ALJ's opinion, it is not consistent with the other evidence of record." *Petitioner's Brief*, p. 9 (Docket No. 23). Petitioner further claims that the ALJ "failed to point to specific evidence contradicting Dr. Silsby's opinion." *Id.*

Petitioner mischaracterizes the nature of the ALJ's decision concerning Dr. Silsby's opinion. As a preliminary matter, the ALJ noted that the GAF score of 40 was inconsistent with the opinion of testifying expert and psychologist, Dr. Michael Dennis, who had the opportunity to observe the Petitioner at the hearing. *Id.* at 510-11. Dr. Dennis testified that Petitioner's mental impairments were "more toward the mild side." (AR 826). He opined that Petitioner had mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (AR 826). Dr. Dennis further opined that Petitioner had moderate limitations with regard to carrying out detailed instructions and interacting with the general public. (AR 828).

Because Dr. Dennis' opinion contradicts that of Dr. Silsby, the ALJ may reject Dr. Silby's opinion for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d at 831. While the opinion of Dr. Dennis cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician or a treating physician, it may provide a basis for the decision if consistent with other evidence in the record. *Id.*

The ALJ rejected Dr. Silsby's opinion on the basis that Dr. Silsby did not examine Petitioner in order to establish a treating relationship, did not have a basis for making a long-term determination of Petitioner's functional limitations, his opinion was based on Petitioner's

**MEMORANDUM DECISION AND ORDER- p. 14**

claimant's subjective complaints, and his opinion is inconsistent with the medical and other evidence in the record. (AR 510). More specifically, the ALJ reasoned that a GAF score of 40 "would indicate a significantly impaired individual who would have had significant limitations in functioning and required significant ongoing mental health care and treatment, which is inconsistent with the overall evidence of record as previously noted." *Id.*. Specifically, the ALJ noted that Petitioner had no history of mental health treatment beyond brief counseling in 2003 (AR 292-294) and "[n]one of the claimant's exacerbations of symptoms lasted for any significant period and none of the treating providers felt he needed inpatient care." *Id.*. Further, "[t]here was no evidence of marked limitations in his ability to function and the descriptions of the claimant by treating physicians were not consistent with marked and extreme limitations of functioning from a mental perspective." *Id.*

The foregoing constitute sufficiently specific and legitimate reasons for rejecting Dr. Silsby's opinion, and these reasons are supported by substantial evidence in the record. The bottom line is that Dr. Silsby's opinion was based on a single consultation with Petitioner on September 12, 2003. (AR 376-78). Moreover, it appears that Dr. Silsby's opinion was based solely upon Petitioner's subjective complaints, and the ALJ had already found that Petitioner was not wholly credible with regard to statements concerning "the intensity, persistence and limiting effects" of his symptoms. (AR 503). In contrast, the ALJ and the medical expert, Dr. Dennis, had the benefit of a much larger set of data, comprised of medical records and work history information, gathered over the course of years. This record is consistent with the opinion of Dr. Dennis and provides substantial evidence in support of the ALJ's decision to reject Dr. Silsby's psychiatric evaluation of Petitioner.

**MEMORANDUM DECISION AND ORDER- p. 15**

### 4. The ALJ's Rejection of Dr. Klos's Opinion

Petitioner argues that the ALJ erred in rejecting the opinion of treating physician, Dr. Martin Klos. *Petitioner's Brief*, p. 10 (Docket No. 23).

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). Like an examining physician, a treating physician's uncontradicted opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d at 830. If contradicted by another doctor, a treating physician's opinion may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id*.

According to Petitioner, the ALJ rejected Dr. Klos' opinion solely based on Petitioner's work history, and Petitioner contends that his failed work attempts cannot support a decision to reject a treating physician's opinion. *Id.* at 10-11. Again, Petitioner mischaracterizes the nature of the ALJ's decision. The ALJ devoted five reasoned paragraphs to the decision to reject Dr. Klos's opinion as expressed on a Medical Opinion of Ability to do Work-Related Activities (Physical) form completed on May 16, 2003 (AR 214-16). (AR 511-12). The ALJ rejected Dr. Klos's opinion concerning Petitioner's physical limitations for the following reasons:

(1) Petitioner was working up to eight hours a day in his detailing business in July 2002.

(2) Petitioner returned to work tying rebar in September 2002.

(3) Petitioner traveled over 425 miles each way to attend his appointments with Dr. Klos;

(4) Petitioner traveled extensively to job sites for his detailing business.

**MEMORANDUM DECISION AND ORDER- p. 16**

(5) Dr. Klos stated that Petitioner's limitations stem from an MRI showing torn disks, "which is inconsistent with his office notes wherein he stated on several occasions, that until he could get a discogram, he could not be certain of the etiology of claimant's symptoms [AR 221]."

(6) Dr. Klos' opinion regarding claimant's limitations are inconsistent with the evidence in the record, "including MRIs and a CT myelogram, which showed the claimant had very minimal structural problems of the spine and only mild arthritic changes to the right shoulder, as well as some residual tenderness to the elbow and wrists."

(7) While Petitioner indicated that he wanted back surgery, "there is no evidence that any of the examining and/or treating specialists found the claimant had any significant problems requiring surgical intervention or recommended long-term narcotic use."

(8) Dr. Klos found no work-related restrictions based on Petitioner's use of narcotic pain medication and consistently stated in his treatment notes that Petitioner showed overall improvement in his pain and function since opiates were used to treat Petitioner's pain and he was doing well with no adverse side-effects.

(9) Dr. Klos's opinion is inconsistent with the residual functional capacity assessments completed by the non-examining state agency consultants, who concluded that Petitioner could return to light work in a different position that did not require frequent stooping and bending, or constant use of the right arm and he was able to sit and walk without severe problems.

(AR 511-12).

**MEMORANDUM DECISION AND ORDER- p. 17**

Moreover, each of the ALJ's reasons for rejecting Dr. Klos's opinion is followed by multiple citations to the record, and these citations support the ALJ's findings. Therefore, it cannot be said that the ALJ rejected Dr. Klos's opinion solely on the basis of his two allegedly failed work attempts. Furthermore, because the decision is based on specific and legitimate reasons supported by substantial evidence in the record, it will not be disturbed on appeal here.

### 5. Petitioner's Ability to Perform Past Relevant Work

Petitioner makes two arguments with regard to the ALJ's evaluation of Petitioner's ability to perform past relevant work. First, Petitioner argues that the work Petitioner performed after December 2004, as a rebar installation supervisor, does not constitute past relevant work, because it was performed after the closed disability period, June 25, 2001 to December 31, 2004. *Petitioner's Brief*, p. 11 (Docket No. 23). Second, Petitioner argues that, if the residual functional capacity opinion provided by Dr. Klos is considered, then Petitioner would not be able to perform the job of surveillance system monitor, an unskilled sedentary job identified by the vocational expert and adopted by the ALJ as a representative job that exists in significant numbers in the national economy. *Id.*.

As a preliminary matter, the ALJ's decision to reject Dr. Klos's opinion has been upheld; therefore, Petitioner's second argument fails. Moreover, it does not appear that the Ninth Circuit has had the opportunity to consider whether work performed after a closed period of disability may be considered past relevant work. However, there is case law supporting the conclusion that "past relevant work" includes any work performed prior to adjudication, including work performed after the closed period of disability. *See Naegele v. Barnhart*, 433 F.Supp.2d 319, 325 (W.D. N.Y. 2006).

**MEMORANDUM DECISION AND ORDER- p. 18**

At the same time, even if the Court were to determine that the ALJ erred by including the rebar installation supervisor as past relevant work, the ALJ also determined, based on the vocational expert's testimony, that Petitioner had the residual functional capacity to perform the representative occupation of surveillance system monitor. (AR 512). Petitioner does not dispute this finding nor the related conclusion that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant . . . is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* Accordingly, the Court will not reverse the decision of the ALJ on the basis that he considered Petitioner's work as a rebar installation supervisor "past relevant work."

## IV.  CONCLUSION

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards. Accordingly, the Court will not substitute its interpretation or judgment for that of the A.L.J. in reaching his decision.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **March 25, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- p. 19**